PETER K. HUSTON (Cal. Bar No. 150058)
MICHAEL L. SCOTT (Cal. Bar No. 165452)
HEATHER S. TEWKSBURY (Cal. Bar No. 222202)
E. KATE PATCHEN (N.Y. Reg. No. 41204634)
Antitrust Division
U.S. Department of Justice
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102-3478
Telephone:   (415) 436-6660
Facsimile:    (415) 436-6687
peter.huston@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. CR-09-0110 SI |
| v. | UNITED STATES' MOTION IN LIMINE #2 TO EXCLUDE TESTIMONY OF THOMAS B. GOLD AND DOUG GUTHRIE |
| AU OPTRONICS CORPORATION;<br>AU OPTRONICS CORPORATION AMERICA;<br>HSUAN BIN CHEN, aka H.B. CHEN;<br>HUI HSIUNG, aka KUMA;<br>LAI-JUH CHEN, aka L.J. CHEN;<br>SHIU LUNG LEUNG, aka CHAO-LUNG LIANG and STEVEN LEUNG;<br>BORLONG BAI, aka RICHARD BAI;<br>TSANNRONG LEE, aka TSAN-JUNG LEE and HUBERT LEE;<br>CHENG YUAN LIN, aka C.Y. LIN;<br>WEN JUN CHENG, aka TONY CHENG; and<br>DUK MO KOO, | Pretrial Conf.: December 13, 2011<br>Time:            3:30 p.m.<br>Court:          Hon. Susan Illston<br>Place:          Courtroom 10, 19th Floor<br><br>Trial Date:    January 9, 2012 |
| Defendants. | |

US' MIL #2 TO EXCLUDE TESTIMONY OF THOMAS B. GOLD AND DOUG GUTHRIE
[CR-09-0110 SI]

# INTRODUCTION

Defendant AU Optronics Corporation ("AUO") sent its employees to dozens of meetings with competitors in Taiwan at which pricing to customers was discussed, and, according to AUO's own documents, often agreed upon.  This evidence forces defendants to step through the looking glass and assert that the evidence is not what it appears to be because it happened in Taiwan.

In support of their Carrollesque defense, defendants seek to introduce the testimony of two cultural "experts" – Dr. Thomas B. Gold and Dr. Doug Guthrie – relating to the nature of East-Asian business culture, specifically focusing on Taiwan.  One witness, Dr. Guthrie, would suggest various "legitimate" reasons why a company in Taiwan would attend meetings with competitors – for example, to gather information or to form business relationships.  The other witness, Dr. Gold, would testify about how businesspeople in Taiwan conduct themselves in meetings, in particular, that they have a tendency not to object or disagree in order to avoid conflict and "that an individual's non-objection or silence to a point raised by another [in a business meeting] should not be construed as an agreement on that issue."

The testimony of these witnesses should be excluded under Federal Rules of Evidence 401 and 702 as both unreliable and unhelpful.  It is unreliable because it is not based on relevant knowledge of, or experience with, the thin-film transistor liquid crystal display panel ("TFT-LCD") industry and the multinational companies and businesspeople who work in that industry. In fact, the true evidence in this case will come from those multinational companies and businesspeople and is completely at odds with what these experts propose to say.  The experts' proposed testimony is irrelevant because it is not sufficiently connected to the facts of this case and would not help the jury in its understanding of the evidence or determination of the facts in issue.

Even if their testimony is otherwise deemed admissible, the testimony of Drs. Gold and Guthrie should be excluded under Rule 403 because its reliance on cultural stereotyping will mislead the jury and confuse the issues.  Finally, Dr. Gold's testimony should be excluded as

US' MIL #2 TO EXCLUDE TESTIMONY OF THOMAS B. GOLD AND DOUG GUTHRIE
[CR-09-0110 SI]

highly prejudicial because it improperly goes to defendants' state of mind.  For these reasons, the government moves *in limine* to exclude the testimony of Drs. Gold and Guthrie.

## ARGUMENT

## I.   The Testimony of Drs. Gold and Guthrie Should Be Excluded under Rules 401 and 702 as Unreliable and Irrelevant

If permitted to testify, Dr. Guthrie would try to provide various explanations for why a company in Taiwan would repeatedly send its employees to meetings with competitors at which pricing to customers was discussed.  Dr. Guthrie would testify, among other things, that "[i]t would not be uncommon for a non-market leader in an East-Asian technology industry to attend meetings with competitors, as such meetings could offer a number of legitimate benefits." Declaration of Michael L. Scott in Support of United States' Motion in Limine #2 to Exclude Testimony of Thomas B. Gold and Doug Guthrie ("Scott Decl."), Ex. A ¶ 6(d).  According to defendants, Dr. Guthrie's testimony would "offer context for an American jury to understand defendants' attendance at the meetings at issue under the indictment."  *Id*. at ¶ 7.

The other witness, Dr. Thomas B. Gold, would testify about how businesspeople in Taiwan conduct themselves in meetings, in particular, that they have a tendency not to object or disagree in order to avoid conflict.  According to defendants, Dr. Gold would testify about the reciprocal nature of interpersonal relationships in Taiwan and the effect this has on business relations.  For example, Dr. Gold would testify "that an individual's non-objection or silence to a point raised by another [in a business meeting] should not be construed as an agreement on that issue."  Scott Decl., Ex. B ¶ 8.  Defendants submit that Dr. Gold's testimony "will provide a backdrop for American jurors to understand the nature of the business activities and meetings at issue under the indictment."  *Id*. at ¶ 9.

While it is unsurprising that defendants are trying to provide an explanation for the dozens of "crystal meetings" in Taiwan, presenting a cultural defense through unqualified experts does not pass muster.  Expert testimony under Rule 702 must be both relevant and reliable.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *United States v. Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010).  An expert's opinion is relevant if it will

2

1    "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid.

2    702.  This is often called the "helpfulness" requirement.  *See Daubert*, 509 U.S. at 591.  The

3    gatekeeping role exercised by district courts "entails a preliminary assessment of whether the

4    reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or

5    methodology properly can be applied to the facts in issue."  *Id.* at 592-93; *see also Redlightning*,

6    624 F.3d at 1111 (holding expert properly excluded because there was insufficient showing that

7    his testimony would have applied to the facts of the case).  This role applies to all expert

8    testimony, not only to "scientific" expert testimony.  *Kumho Tire Co., Ltd. v. Carmichael*, 526

9    U.S. 137 (1999).

10          The party seeking to admit expert testimony bears the burden of establishing by a

11   preponderance of the evidence that the admissibility requirements are met.  *Daubert*, 509 U.S. at

12   593 n.10; *United States v. 87.98 Acres of Land More or Less in the Cnty. of Merced*, 530 F.3d

13   899, 904 (9th Cir. 2008) (citing *Lust v. Merrell Dow Pharm., Inc.,* 89 F.3d 594, 598 (9th Cir.

14   1996)).  "[T]he party proffering the evidence must explain the expert's methodology and

15   demonstrate in some objectively verifiable way that the expert has both chosen a reliable

16   scientific method and followed it faithfully."  *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d

17   1311, 1319 n.11 (9th Cir. 1995).

18          **A.      The Testimony of Drs. Gold and Guthrie Is Unreliable**

19          Dr. Guthrie is an expert in the field of economic reform in China, not business culture in

20   the TFT-LCD industry.  Dr. Guthrie has no particular knowledge of or experience with

21   international technology industries, the TFT-LCD industry, or the multinational companies and

22   individuals involved in that industry, and cannot offer a reliable opinion regarding why "a non-

23   market leader in an East-Asian technology industry" would attend dozens of pricing meetings

24   with competitors.  Scott Decl., Ex. A ¶ 6(d).  Moreover, Dr. Guthrie's testimony that such

25   meetings "could offer a number of legitimate benefits" is pure speculation and is not based on

26   sufficient facts, data, or experience that are relevant to the industry or companies in this case.  *Id.*

27   As such Dr. Guthrie's testimony is unreliable and should be excluded under Rule 702.

28

3

1    Similarly, Dr. Gold's testimony regarding the way that businesspeople in Taiwan interact

2   in "high technology industries" is not reliable because it is not based on relevant knowledge of,

3   or experience with, international technology industries such as the TFT-LCD industry and the

4   multinational businessmen who work in that industry.  Scott Decl., Ex. B ¶ 7.  Instead, Dr.

5   Gold's opinion is based on sweeping generalizations and cultural stereotypes that have no

6   relation to the facts of this case and, in fact, are demonstrably disproved by the facts in this case.

7   There are dozens of crystal meeting reports, currently under consideration by the Court in

8   connection with the government's motions for admissibility rulings regarding AUO corporate

9   documents and coconspirator statements, which describe discussions and healthy debate by the

10  participants in the crystal meetings.  Moreover, the 14 guilty pleas in this investigation

11  indisputably prove that the participants themselves understood that illegal agreements were being

12  reached at those meetings.  Dr. Gold's testimony should therefore be excluded as unreliable

13  under Rule 702. [1]

14         **B.       The Testimony of Drs. Gold and Guthrie Is Unhelpful and Irrelevant**

15          Dr. Guthrie's proposed testimony about why a company in Taiwan might meet with its

16  competitors to discuss pricing is not relevant to any issue in this case.  Defendants maintain that

17  Dr. Guthrie's testimony "will offer context for an American jury to understand defendants'

18  attendance at the meetings at issue under the indictment."  Scott Decl., Ex. A ¶ 7.  However, the

19  fact that AUO and some of the individual defendants attended meetings with their competitors is

20  not the issue in the case and is not by itself a crime.  The issue is whether defendants joined a

21  conspiracy to fix the price of TFT-LCDs.  Defendants could have had some legitimate reasons to

22  attend some meetings with competitors and still conspired to fix prices with their competitors at

23  those (or other) meetings.  Dr. Guthrie is in no position to address that issue because, unlike

24  many witnesses who will testify at trial, he did not attend the meetings.  The jury has no need to

---

[1]      Dr. Gold's testimony might be deemed reliable if he was a trained psychologist and his opinion regarding the behavior of businesspeople in Taiwan was based on psychological methodology or reasoning or on personal experience with defendants.  *See United States v. Finley*, 301 F.3d 1000, 1008-12 (9th Cir. 2002) (expert testimony of licensed clinical psychologist who had examined the defendant was reliable).  However, he is not.

4

1   hear from Dr. Guthrie about what might have happened at some hypothetical meetings in Taiwan

2   when they will hear from percipient witnesses about what *really did happen* at the actual crystal

3   meetings in Taiwan.  Thus, Dr. Guthrie's testimony as to why a company in Taiwan would meet

4   with competitors would not assist the jury to determine a fact in issue in this case and should be

5   excluded under Rule 702.

6          Additionally, the testimony of Drs. Guthrie and Gold is not sufficiently connected to the

7   particular industry, companies, or individuals in this case to be relevant.  Dr. Guthrie will only

8   offer generalized testimony about why a company in Taiwan might meet with its competitors

9   that is not linked to the particular multinational companies or the TFT-LCD industry in this case.

10   Dr. Gold's testimony about the behavior of businesspeople in Taiwan in general is based on

11   cultural stereotypes and is not connected to the multinational businesspeople in the TFT-LCD

12   industry.  The Ninth Circuit has ruled that such testimony should be excluded as not relevant.

13   *See Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1010-11 (9th Cir. 2001)

14   (Wallace, J., concurring) (generalized testimony on Korean business culture and practices is

15   irrelevant when not linked to particular businessman and particular business transaction at issue);

16   *United States v. Chen*, 754 F.2d 817, 823 (9th Cir. 1985) (excluding testimony of expert on

17   customs in Taiwan that was not based on a personal examination of the defendants).

18          Moreover, the proposed testimony of Drs. Gold and Guthrie would not help the jury in its

19   understanding of the evidence or determination of the facts in issue.  The jury needs little more

20   than logic and common sense to determine whether or not defendants participated in the

21   conspiracy charged in the indictment.  It would not assist the jury for Dr. Guthrie to speculate as

22   to why companies in Taiwan might meet month after month after month with competitors to

23   discuss pricing, nor would it help the jury for Dr. Gold to describe the behavior of

24   businesspeople in Taiwan in general who have no connection to the facts in this case.  What will

25   help the jury is testimony from numerous witnesses who actually did attend the crystal meetings,

26   know what was discussed and decided at those meetings, and know why.  Defendants will have

27   ample opportunity to cross-examine those witnesses.  By comparison, the proposed testimony of

28   Drs. Guthrie and Gold is rank speculation and adds nothing probative.

1        The jury will have more than enough information with which to make a determination

2   without calling cultural experts to testify about business attitudes and general behavior in

3   Taiwan.  This is not a case where the experts will provide information that the jury would

4   otherwise not know and that would assist the jury in making its decision.  *See Finley*, 301 F.3d at

5   1013-14 (testimony of a psychologist who identified a personality disorder in the defendant was

6   relevant).  Testimony from cultural experts should not be allowed where, as here, it would not

7   assist the jury to determine the issues in the case.  *See, e.g.*, *United States v. Sayakhom*, 186 F.3d

8   928, 936 (9th Cir. 1999) (affirming exclusion of cultural expert testimony that would not have

9   been helpful to the jury); *United States v. Hoac*, 990 F.2d 1099, 1103 (9th Cir. 1993) (testimony

10  by expert on Chinese culture properly excluded where expert's knowledge of defendant was

11  limited and testimony would not have helped the jury).

12  **II.    Even if Otherwise Admissible, the Testimony of Drs. Gold and Guthrie Should Be
        Excluded under Rule 403 as Prejudicial and Confusing**

13

14       Under Rule 403, even relevant expert evidence may be excluded "'if its probative value

15  is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or undue

16  delay.'"  *Jinro America Inc.*, 266 F.3d at 1006 (quoting *Hoac*, 990 F. 2d at 1103); *see also*

17  *United States v. Chischilly*, 30 F.3d 1144, 1156 (9th Cir. 1994) (Rule 403 requires "judicial

18  vigilance against the risk that such evidence will inordinately distract the jury . . . or skew its

19  perception").  In *Daubert*, the Supreme Court stressed that Rule 403 requires judges to exercise

20  more caution in admitting expert witness testimony.  509 U.S. at 595 (expert testimony "'can be

21  both powerful and quite misleading . . . [therefore] the judge in weighing possible prejudice

22  against probative force under Rule 403 . . . exercises more control over experts than over lay

23  witnesses'") (citation omitted).

24       Cultural expert testimony has been a subject of numerous Ninth Circuit decisions.

25  Suffice it to say, where such evidence is "tantamount to ethnic or cultural stereotyping, inviting

26  the jury to assume the [defendant] fits the stereotype," it should be excluded under Rule 403's

27  balancing test.  *Jinro America Inc.*, 266 F.3d at 1007; *see also United States v. Bahena-*

28  *Cardenas*, 411 F.3d 1067, 1078-79 (9th Cir. 2005) (it was not an abuse of discretion to refuse to

US' MIL #2 TO EXCLUDE TESTIMONY OF THOMAS B. GOLD AND DOUG GUTHRIE
[CR-09-0110 SI]

allow "expert testimony that would encourage or require jurors to rely on cultural stereotypes");

*United States v. Verduzco*, 373 F.3d 1022, 1033-34 (9th Cir. 2004) (excluding testimony that

sought to link the actions or beliefs of the defendant with those socialized in Mexico); *Hoac*, 990

F 2d. at 1103 (excluding expert testimony about how Chinese cultural factors might cause

defendant to travel long distances for legitimate business dealings); *United States v. Rubio-*

*Villareal*, 927 F.2d 1495, 1502 (9th Cir. 1991) (rejecting cultural expert testimony that would

have shown that defendant's failure to register his truck is a common phenomenon in Mexico).

Here, the testimony of Drs. Gold and Guthrie risks confusing the issues and misleading the jury

because it invites the jury to rely on ethnic bias and cultural stereotyping regarding how business

is conducted in Taiwan between businesspeople of East-Asian descent.

In particular, Dr. Gold would testify that businesspeople in Taiwan in general "would

tend not to object or to disagree" with industry peers and that "an individual's non-objection or

silence to a point raised by another should not be construed as an agreement on that issue."  Scott

Decl., Ex. B ¶ 8. [2]  By presenting such testimony, defendants are inviting the jury to infer that

defendants and their coconspirators acted in accordance with a cultural stereotype and therefore

did not agree with their competitors to fix prices – regardless of what the actual percipient

witnesses testify and their documents expressly state.  Similarly, Dr. Guthrie's proposed

testimony that it is not uncommon for companies in Taiwan to meet with competitors for

particular reasons, including to gather information, would invite the jury to conclude that

defendants' actions were consistent with those of companies in Taiwan in general and thereby

ignore the percipient evidence regarding the purpose and effect of the crystal meetings at issue in

this case.  These are precisely the reasons that the Ninth Circuit has repeatedly affirmed

exclusion of similar cultural expert testimony in past cases.

/ / /

/ / /

---

[2]    This proposed testimony of Dr. Gold, in essence, suggests that the actual participants at the crystal meetings are not capable of understanding and accurately conveying what was discussed and agreed upon at those meetings because they were meeting with people, who like themselves, were East Asian.

US' MIL #2 TO EXCLUDE TESTIMONY OF THOMAS B. GOLD AND DOUG GUTHRIE
[CR-09-0110 SI]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**III.     Dr. Gold's Testimony Would Improperly Go to Defendants' State of Mind**

Besides being unreliable and irrelevant, Dr. Gold's testimony is highly prejudicial because it improperly goes to the state of mind of defendants.   Rule 704(b) provides that:  "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone."  Fed. R. Evid. 704(b).  This rule is not limited to psychiatrists and other mental health experts, but rather extends to all expert witnesses. *United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997).  Dr. Gold will testify that a businessperson in Taiwan's "non-objection or silence to a point raised by another should not be construed as an agreement on that issue."  Scott Decl., Ex. B ¶ 8.  This is nothing more than an indirect attempt to have an "expert" explain the state of mind of defendants.  Unlike the testimony in *Finley* about the defendant's mental condition, Dr. Gold's proposed testimony could not successfully be limited "such that it in no way touches upon the specific issues of fact to be resolved by the jury."  *Finley*, 301 F.3d at 1016.

To the contrary, Dr. Gold's testimony would go directly to the issue of fact to be decided in this case – whether defendants agreed with their competitors to fix prices.  Because Dr. Gold's testimony would go to the specific issue of fact to be resolved by the jury, it is expressly prohibited by Rule 704(b).  *See Verduzco*, 373 F.3d at 1034 (cultural expert testimony on defendant's mental state or condition would have been impermissible).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

8

**CONCLUSION**

The proffered opinions of Drs. Gold and Guthrie should be excluded because defendants have not demonstrated that such testimony is reliable or would be helpful to the jury's deliberations on defendants' guilt or innocence.  Even if their opinions were otherwise deemed admissible, the testimony of Drs. Gold and Guthrie should be excluded because their opinions risk confusing the issues and misleading the jury, and invite the jury to rely on cultural stereotyping and ethnic bias.  Moreover, the testimony of Dr. Gold is highly prejudicial because it inevitably and impermissibly goes to the state of mind of defendants.  Accordingly, the government respectfully requests that the Court exclude the testimony of Drs. Gold and Guthrie in its entirety.

Dated:  December 6, 2011                     Respectfully submitted,


/s/ Peter K. Huston
Peter K. Huston
Michael L. Scott
Antitrust Division
U.S. Department of Justice

9

US' MIL #2 TO EXCLUDE TESTIMONY OF THOMAS B. GOLD AND DOUG GUTHRIE
[CR-09-0110 SI]